UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALAIN ISAI RIVAS CONTRERAS,<br><br>Defendant. | Case No.:  25-CR-4185-TWR<br><br>**ORDER DENYING DEFENDANT'S REQUEST FOR A MINIMAL ROLE ADJUSTMENT UNDER GUIDELINE § 2D1.1(e)(2)(B)(i)** |

Pending before the Court is Defendant Alain Isai Rivas Contreras's request that the Court apply § 2D1.1(e)(2)(B)(i) of the United States Sentencing Guidelines Manual and grant him a minimal-role adjustment under Guideline § 3B1.2(a).  For the reasons set forth below, the Court **DENIES** Defendant Rivas Contreras's request.

**I.    Factual and Procedural Background[1]**

On July 19, 2025, at approximately 9:30 a.m., Defendant Rivas Contreras applied for entry into the United States from Mexico via the San Ysidro Port of Entry in San Diego, California.  Defendant Rivas Contreras was the driver, sole occupant, and registered owner

---

[1]    The following facts are taken from the Presentence Report filed by United States Probation Officer Juan Valencia on January 9, 2026.  (*See* ECF No. 39.)  Neither Party has filed objections to the PSR.  (*See generally* Docket.)

of a 2018 Kia Forte bearing Mexican license plates.  A narcotics detection canine conducting pre-primary operations alerted to the vehicle.

Defendant Rivas Contreras gave two negative customs declarations to a United States Customs and Border Protection ("CBP") officer and stated that he was crossing the border to shop in San Ysidro.  A second CBP officer noticed a non-factory compartment in the floor area of the vehicle and referred the 2018 Kia Forte for further inspection in the secondary inspection area.  An X-ray scan revealed anomalies in the floor and undercarriage area of the vehicle.  A subsequent search of the vehicle resulted in the seizure of 48.62 kilograms of cocaine.  Defendant Rivas Contreras was then placed under arrest.

Defendant Rivas Contreras's jury trial commenced on November 17, 2025.  On November 19, 2025, the jury found Defendant Rivas Contreras guilty of participating in a conspiracy to import more than 5 kilograms of cocaine in violation of Title 21, United States Code, Sections 952, 960, and 963, and importation of more than 5 kilograms of cocaine in violation of Title 21, United States Code, Sections 952 and 960.

On February 9, 2026, Defendant Rivas Contreras filed a Sentencing Memorandum, (*see* ECF No. 44), in which he requests, among other Guideline calculations, that he be given a four-level downward adjustment for minimal role pursuant to Guideline §§ 2D1.1(e)(2)(B)(i) and 3B1.2(a).  *See* ECF No. 44 at 5.  The Government has filed a Sentencing Memorandum opposing that request.  *See* ECF No. 43 at 9–11.

## II.    Discussion

### A.    *Role Adjustments Under the Recent Guideline Amendments*

Recently added Guideline § 2D1.1(e)(2)(B) addresses the application § 3B1.2, the mitigating role Guideline provision, to drug importation cases such as this one.  More specifically, § 2D1.1(e)(2)(B) does so through an evaluation of whether an offender's primary function in the offense was performing "a low-level trafficking function."  Subsection (i) provides that a four-level minimal role adjustment under § 3B1.2(a) is "generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands,

sending or receiving phone calls or messages, or acting as a lookout." U.S.S.G. § 2D1.1(e)(2)(B)(i).

### B.    Application of Section 2D1.1(e)(2)(B)(i) to This Case

Here, Defendant Rivas Contreras was responsible for transporting 48.62 kilograms of cocaine from Mexico to the United States via the San Ysdiro Port of Entry. He therefore clearly meets the dictionary definition of a drug "courier," that is, someone who transported drugs from point A (Mexico) to point B (the United States). According to Defendant Rivas Contreras, that is the end of the Court's inquiry under § 2D1.1(e)(2)(B)(i). *See* ECF No. 44 at 5 (arguing that all Defendant Rivas Contreras did was "move drugs from one location to another" and that he therefore meets the "plain meaning" of the word "courier" as used in § 2D1.1(e)(2)(B)(i)).

Defendant Rivas Contreras's interpretation of § 2D1.1(e)(2)(B)(i) is similar to that adopted in *United States v. Maciel*, 789 F. Supp. 3d 934 (S.D. Cal. 2025), in which the court concluded that "a person whose primary function is to transport drugs—regardless of the amount of drugs they are transporting and regardless of whether they are transporting drugs across an international border—is a 'courier' in the context of amended § 2D1.1(e)(2)(B)(i)." *Maciel*, 789 F. Supp. 3d at 937. In concluding that cross-border drug smugglers are "generally" entitled to a minimal role reduction under § 2D1.1(e)(2)(B)(i), the court in *Maciel* considered (1) the testimony from several practicing attorneys who used the term "courier" to refer to cross-border drug smugglers during a hearing regarding the proposed Guideline amendments before the Sentencing Commission, (2) the Ninth Circuit's use of the term "courier" in addressing cross-border drug smuggling in two decisions issued in 2014 and 2018, and (3) the Sentencing Commission's Office of General Counsel's use of the term "courier" (albeit in tandem with the term "mule") in a 2024 primer on proposed Guideline amendments. *See Maciel*, 789 F. Supp. 3d at 938–39. However, as there is no reasonably discernable nexus between these three bases and the Sentencing Commission's ultimate decision to use the word "courier" in § 2D1.1(e)(2)(B)(i), this Court finds *Maciel*'s reasoning unhelpful in properly interpreting

the term "courier" as used in § 2D1.1(e)(2)(B)(i).  *See United States v. Joey*, 845 F.3d 1291, 1297 n.8 (9th Cir. 2017) ("As with the interpretation of legal texts generally, our search for the Sentencing Commission's intent will most often begin and end with the text and structure of the Guidelines.") (internal quotation marks omitted).

Moreover, *Maciel* does not address the Sentencing Commission's use of the term "courier" in relation to the other examples given in § 2D1.1(e)(2)(B)(i) or read § 2D1.1(e)(2)(B)(i) in harmony with § 2D1.1(e)(2)(B)(ii).  *See United States v. Martinez*, 870 F.3d 1163, 1166 (9th Cir. 2017) ("In interpreting the text [of a guideline provision], we look at the structure of the guidelines as a whole to understand the provision in context."); *United States v. Petrushkin*, 142 F.4th 1241, 1246 (9th Cir. 2025) ("We interpret the Sentencing Guidelines using the ordinary tools of statutory interpretation.  Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.") (internal quotations and citations omitted).  As such, this Court does not find Defendant Rivas Contreras's reliance on *Maciel* persuasive.

Employing—as the Court must—the canons of statutory construction, this Court finds that the term "courier" as used in § 2D1.1(e)(2)(B)(i) is a term of art that must be read in the context of, and harmoniously with, the accompanying examples of roles which the Sentencing Commission co-designates as "plainly among the lowest level of drug trafficking functions."  *See United States v. Soberan*es, 318 F.3d 959, 963 n.4 (9th Cir. 2003) ("We use traditional canons of statutory construction to interpret the sentencing guidelines."); *see also Fischer v. United States*, 603 U.S. 480, 487 (2024) ("[T]he canon of *noscitur a sociis* teaches that a word is 'given more precise content by the neighboring words with which it is associated[]' [and] . . . 'avoid[s] ascribing to one word a meaning so broad that it is inconsistent with' 'the company it keeps.'") (fifth alteration in original) (first quoting *United States v. Williams*, 553 U.S. 285, 294 (2008); then quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995))).  Thus, for § 2D1.1(e)(2)(B)(i) to apply, the "courier" role performed by Defendant Rivas Contreras must be functionally equivalent to

the other tasks listed—"running errands, sending or receiving phone calls or messages, or acting as a lookout[.]"

The Court further finds that transporting a large quantity of drugs across the international border between the United States and Mexico is not "plainly among the lowest level of drug trafficking functions." Indeed, successfully crossing narcotics across the international border is one of the most critical and risky drug trafficking functions. The risk of the drugs being detected and seized at the border is heightened by the presence of law enforcement officers, drug detecting dogs, X-ray inspection devices, and random searches. Further, it is a basic principle of the drug trafficking world that the value of narcotics increases significantly following a successful border crossing, (*see, e.g.*, ECF No. 41 at 20:2–21:1 (Defendant Rivas Contreras's drug trafficking expert testifying that "[t]he drugs sitting in [Mexico] . . . are pretty must zero value. [The drug trafficking organization] need[s] to get them across [the border] to make money.")), thus confirming the critical nature of a cross-border smuggling event. *See, e.g.*, *id.* at 28:18–29:3 (Defendant Rivas Contreras's expert testifying that "it's the driver that gets the[ drugs] from Mexico to the United States" and therefore "is important for that particular mission"). Simply put, a defendant who is entrusted with transporting a large quantity of drugs across the international border does not perform a low-level drug trafficking function. Rather, such a defendant performs a significant drug trafficking function that is integral to the overall success of the drug trafficking organization and is in no way akin to running an errand, sending or receiving a phone call or message, or acting as a lookout. To conclude otherwise would lay bare a profound misunderstanding of how drug trafficking organizations function.

## C.   Section 2D1.1(e)(2)(B)(i) Must Be Read in Harmony with Section 2D1.1(e)(2)(B)(ii)

The above-stated conclusion regarding the applicability of § 2D1.1(e)(2)(B)(i) is consistent with the scope, language, and requirements of its accompanying Guideline provision—§ 2D1.1(e)(2)(B)(ii)—which addresses when a two-level minor role

adjustment is appropriate under § 3B1.2(b).  To be clear, a defendant who is entitled to receive a four-level minimal role adjustment (*i.e.*, the adjustment requested by Defendant Rivas Contreras) must perform a relatively lower-level drug trafficking function and therefore be even less involved in the offense than a defendant entitled to a two-level minor role adjustment.  In other words, a "courier," as that term is used in subsection (i), must be even less involved than someone performing what subsection (ii) labels "another low-level trafficking function."

The example given in subsection (ii) is an individual who is "distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit."  Examples of conduct that would fall within the ambit of subsection (ii) include a drug addict sharing his or her drugs with a co-addict or a recreational drug user sharing a portion of his or her "stash" with friends.  *See* Ninth Circuit Committee on Model Jury Instructions, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* § 12.4 (rev. Dec. 2025) ("'Distributing' means delivering or transferring possession of [specified controlled substance] to another person, with or without any financial interest in that transaction.").  This Court finds that it cannot credibly be argued that transporting a large quantity of narcotics[2] from Mexico to the United States is a drug trafficking function that is a lower-level function than distributing user-level quantities of drugs for little or no monetary compensation.  Again, to conclude otherwise would lay bare a profound misunderstanding of the drug trafficking world.

/ / /

/ / /

/ / /

---

[2]   At trial, the Government introduced expert witness testimony that the 48.62 kilograms of cocaine being smuggling into the United States by Defendant Rivas Contreras had a wholesale value of between $376,500 and $715,350 and a retail value between $1,882,500 and $3,765,000.  (*See, e.g.*, ECF No. 41 at 26:12–14.)

**III.    Conclusion**

For the reasons discussed above, the Court **DENIES** Defendant's request for a minimal role adjustment pursuant to Guideline §§ 2D1.1(e)(2)(B)(i) and 3B1.2(a).

**IT IS SO ORDERED.**

Dated:  2/13/2026

HON. TODD W. ROBINSON
UNITED STATES DISTRICT JUDGE

7